NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WÄRTSILÄ NSD NORTH AMERICA, INC., | : | |
|     Plaintiff, | : | Civil Action No. 99-4565 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| HILL INTERNATIONAL, INC., | : | |
|     Defendant. | : | |

**Appearances:**

    Richard E. Brennan, Esquire
    Michael O. Adelman, Esquire
    Mark R. Galdieri, Esquire
    Drinker Biddle & Reath, LLP
    500 Campus Drive
    Florham Park, NJ 97932-1047
        Attorneys for Plaintiff

    David L. Braverman, Esquire
    Braverman Daniels Kaskey Ltd.
    1650 Market Street, 21st Floor
    Philadelphia, PA 19103

    J. Ian Downes, Esquire
    M. Frances Ryan, Esquire
    Dechert LLP
    Princeton Pike Corporate Center
    PO Box 5218
    Princeton, NJ 08543
        Attorneys for Defendant

**RODRIGUEZ, Senior District Judge:**

    This matter comes before the Court on Plaintiff Wärtsilä NSD North America, Inc.'s ("Wärtsilä") Motion in Limine [208] to allow the revised expert testimony of Robert C. McCue.

For the reasons expressed herein, the motion will be denied.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The underlying facts of this case are well known to this Court and are set forth at length at Wärtsilä NSD N. Am. v. Hill Int'l, Inc., 269 F. Supp 2d 547, 549-51 (D.N.J. 2003). Only those facts relevant to this motion will be set forth below.

On December 30, 2003, this Court[1] excluded the testimony of Plaintiff's expert, Robert C. McCue, as inadmissible under Fed. R. Evid. 702. Wärtsilä NSD N. Am. V. Hill Int'l, Inc., 299 F. Supp 2d 400, 407 (D.N.J. 2003). The Court held that there was "too great of an analytical gap between an assessment of the importance of first-hand knowledge in an engineering arbitration and McCue's conclusion that Wärtsilä should recover." Id. Although the Court stated that it would have no difficulty finding McCue's testimony admissible if it were limited to issues of engineering, arbitration and damages, it further stated that McCue's conclusions were directed at credibility and causation. Id. at 405. The Court reasoned that McCue had failed to meet the reliability requirements under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. Id.

Specifically, the Court was troubled by the fact that "Wärtsilä provide[d] no methodology for McCue's assessment of damages except his own view of the merits, no methodology for McCue's inference that LeFebvre's fraud should lead to [Hill International, Inc.'s ("Hill")] liability, [and] no methodology for any of the other inferences that must be drawn before one may finally conclude that Wärtsilä is entitled to recover from Hill." Id. at 406. Moreover, the

---

[1] The Opinion and Order were signed by Judge Brotman, U.S.D.J.

Court noted that "[it], and the jury, [are] left with nothing more than subjective belief that Wärtsilä should recover simply because McCue thinks Wärtsilä should recover. Id.

Subsequent to the Order excluding McCue's expert testimony, Wärtsilä instructed McCue to revise his report to conform to this Court's Opinion. Wärtsilä served Hill with a copy of McCue's revised report on February 6, 2004. (Pl. Br., p. 1.) As a result, several letters exchanged between the parties' counsel regarding the propriety of the revised report. (Pl. Br., p. 2.)

Wärtsilä argues that the revised report is admissible because it meets the requirements of Fed. R. Civ. P. 702, it falls within the purview of this Court's prior Opinion, and because Wärtsilä will be prejudiced if it is excluded. Hill, on the other hand, argues that McCue's revised report is inadmissible because the law of the case forecloses the testimony and because the revised report does not cure the fatal defects in the proposed testimony.

## DISCUSSION

The admissibility of expert testimony is governed by Fed. R. Evid. 702. The Rule provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2000). In applying this Rule, the Court has held that the district courts are "gatekeepers" responsible for excluding unreliable evidence. Daubert, 509 U.S. at 597. The

Court has stated that "the trial judge must have considerable leeway in deciding . . . whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). However, the Court has also emphasized that the "inquiry envisioned by [Fed. R. Evid] 702 is a . . . flexible one," and noted that the "focus must be solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595. The Third Circuit has described the factors as a trilogy, requiring qualification, reliability, and fit. Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003). Only the reliability of McCue's expert testimony is at issue here.

In order to show that an expert's opinion is reliable, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 590). See also Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000) (citing Paoli, 35 F.3d at 744 (stating that the "test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct [, but that] the test is whether the 'particular opinion is based on valid reasoning and reliable methodology'")).

"Although the reliability inquiry must bend with the particular idiosyncrasies of the relevant expertise under consideration, the Court may not abdicate its gatekeeping role merely because an expert relies on general experience or principles." Wärtsilä, 299 F. Supp 2d at 407 (citing Milanowicz v. Raymond Corp., 148 F. Supp 2d 525, 532 (D.N.J. 2001) (quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general . . . principles and practical experience might escape screening by

4

the district court simply by stating that their conclusions were not reached by any particular method or technique.  The moral of this approach would be, the less factual support for an expert's opinion, the better."))).  Absent a showing of reliability, "a court may conclude that there is simply too great a gap between the data and the opinion proffered."  Oddi, 234 F.3d at 146 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

       To assist the district courts in determining whether an expert's opinion is reliable, the Third Court has provided a list of factors to consider to begin the inquiry.  These include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re Paoli, 35 F.3d at 742 n.8.  This list, however, is not exhaustive.  Calhoun, 350 F.3d at 321.

       While the Court appreciates that McCue's revised report is somewhat different on the surface, it remains flawed for the reasons expressed in this Court's earlier Opinion.  For example, in the section of the revised report that addressed curing Black and Veatch International's mechanical deficiencies, McCue attempts to set forth in some detail the value of the testimony from various witnesses at the arbitration, including Juan Radulovic, Omar Solorzano, Peter Monaghan and Chris Bakewell.  (Pl. Br., Exh. A, p. 8-10.)  He concludes that "[b]ased upon [a] review of all of the evidence presented by Wärtsilä, . . . Wärtsilä should have been awarded the amount of $1,551,430.13."  (Pl. Br., Exh. A, p. 11.)  McCue performs similar analysis throughout his report, regarding the oily water separator, electrical deficiencies, consultant's claim,

mechanical supervision, quantum meter, radiator deficiencies, extended builder's risk insurance, and diesel generator building.

In the end, however, all that remains is McCue's own view of the merits.  Again, the Court and the jury are left with nothing more than McCue's subjective belief that Wärtsilä should recover.  Wärtsilä has failed to suggest that there is a methodology that supports McCue's opinions.  Therefore, the Court finds that the analytical gap between an assessment of the evidence presented in the arbitration and McCue's conclusion that Wärtsilä should recover is still too great.  Accordingly, Wärtsilä's Motion in Limine will be denied.[2]

## CONCLUSION

Based on the foregoing, Wärtsilä's Motion in Limine [208] to allow the revised expert testimony of Robert C. McCue will be denied.

An appropriate Order will issue this date.


/S/  Joseph H. Rodriguez
Joseph H. Rodriguez, U.S.D.J.

Dated: December   14   , 2005

---

[2] Because the Court finds that the revised report fails to meet the requirements of Fed. R. Evid. 702, it is unnecessary to determine whether a revised report that did meet Fed. R. Evid. 702's requirements would be admissible.